UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.L. BOYD, R. CAMOU, and C. ROBINSON,<br><br>       Plaintiffs,<br><br>   v.<br><br>ROBERT LUNA, KATHRYN BARGER, JANICE HAHN, HOLLY MITCHELL, HILDA SOLIS, LINDEY HORVATH, HUGO MACIAS, and 9 UNKNOWN NAMED DEFENDANTS, 1–9,<br><br>       Defendants. | Case No. 2:24-cv-05716-SPG-AJR<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br>**[ECF NO. 23]** |

Before the Court is Plaintiff J.L. Boyd's ("Boyd") Motion for Preliminary Injunction. (ECF No. 23 ("Motion")). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES the Motion.

I.   **BACKGROUND**

As relevant to this Motion, Boyd alleges that, over the past four years, he has experienced "intolerably bad conditions" at the Los Angeles Men's Central Jail (the "Jail").

(ECF No. 33 (First Amended Complaint ("FAC") ¶ 9). Boyd specifically alleges "[b]ad plumbing" and "broken toilets in . . . numerous cells," which "sometimes" overflowed with sewage and destroyed his property and belongings.[1] (*Id.*). Boyd also alleges that his and other Jail residents' cells were infested with cockroaches, and that "[t]here were several times that plaintiffs went without eating dinner, because they didn't feed them." (*Id.*). Additionally, and specific to Boyd, Boyd alleges that he sought to move to the Jail's "military dorm" or a "medical dorm," but that he was instead housed in "gang modules" with "gang members" who physically injured Boyd, stole his belongings, and otherwise mistreated him. (*Id.*).

Boyd initiated this lawsuit on July 8, 2024, seeking relief against various Los Angeles County officials ("Defendants") for alleged unconstitutional practices at the Jail. (ECF No. 1 ("Complaint")). On August 20, 2024, Defendants moved to dismiss the Complaint. One week later, on August 27, 2024, Boyd filed the instant Motion as well as a Motion for Class Certification. (Mot.; ECF No. 24).

On August 29, 2024, Defendants filed an *ex parte* application seeking to continue the hearing on the Motion until October 16, 2024. (ECF No. 26). The Court granted the application in part and extended the hearing date and related briefing deadlines for the Motion by one week. (ECF No. 28). Defendants timely opposed the Motion. (ECF No. 32 ("Opposition")). On September 11, 2024, the same day Defendants' Opposition was due, Plaintiffs Boyd, R. Camou, and C. Robinson (together, "Plaintiffs") filed the FAC. The Court, in its discretion and in the interests of judicial economy, kept all pending motions set for hearing as then-scheduled. (ECF No. 34). Plaintiffs timely replied in support of the Motion on September 16, 2024. (ECF No. 35 ("Reply")).

---

[1] It is unclear from the FAC whether this problem impacted other individuals or only Boyd because Plaintiffs use both singular ("his") and plural ("theirs") pronouns in this sentence when describing the impact of the conditions on the belongings. *See* (*id.*).

## II. LEGAL STANDARD

### A. Injunctive Relief

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). A movant seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits of his claim; (2) he is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in his favor; and (4) a preliminary injunction is in the public interest. *Id.* at 20. The first *Winter* factor, likelihood of success on the merits, is a "threshold inquiry and is the most important factor in any motion for a preliminary injunction." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal quotation marks and citation omitted). *See also Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). The importance of this factor "holds especially true for cases where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation." *Baird*, 81 F.4th at 1042. If the government is the non-moving party, the last two factors—the balance of equities and public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Where, as here, the movant seeks not to maintain the status quo pending a determination of the action on the merits, *see Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988), but instead an order requiring the nonmoving party to act, the movant seeks a mandatory injunction, *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Such injunctions "go[] well beyond simply maintaining the status quo" and are accordingly "particularly disfavored." *Id.* (citation omitted). In the Ninth Circuit, mandatory preliminary injunctions are subject to "heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). *See also Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022). A plaintiff must show that "extreme or very serious damage" will occur unless the Court grants their requested injunction. *Id.* (citation omitted). "In plain terms, mandatory injunctions should not issue in doubtful cases." *Garcia*, 786 F.3d at 740 (internal quotation marks and citation omitted).

A preliminary injunction may be awarded only "upon a clear showing" of evidence that supports each relevant preliminary injunction factor. *Winter*, 555 U.S. at 22. "This 'clear showing' requires factual support beyond the allegations of the complaint, but the evidence need not strictly comply with the Federal Rules of Evidence." *Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866, 870 (C.D. Cal. 2021) (citation omitted). Due to the exigent nature of a preliminary injunction, parties may be unable to produce admissible evidence. *Puricle, Inc. v. Church & Dwight Co., Inc.*, 568 F. Supp. 2d 1144, 1147 (C.D. Cal. 2008). As a result, for purposes of evaluating a preliminary injunction, a court may properly consider evidence that would otherwise be inadmissible at trial. *Id. See also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings."); *Moroccanoil, Inc. v. Dermorganic Labs., Inc.*, No. CV 09-4257 CBM (PAx), 2009 WL 10675634, at *4 (C.D. Cal. 2009) (accord).

In evaluating a motion for a preliminary injunction, the Court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the motion. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988). Courts may also, in their discretion, "weigh evidence submitted in support of or against a motion for preliminary injunctive relief." *Cherokee Inc. v. Wilson Sporting Goods Co.*, No. CV 15-04023 BRO EX, 2015 WL 3930041, at *3 (C.D. Cal. June 25, 2015). Where, however, "the parties fundamentally disagree on the facts underlying the case," "courts routinely deny requests for preliminary injunctions." *Teddy's Red Tacos Corp. v. Vazquez*, CV 19-03432-RSWL-AS, 2019 WL 6895983, at *3 (C.D. Cal. Oct. 10, 2019) (citation omitted). *See, e.g.*, *Marina Vape, LLC v. Nashick*, No. 16-cv-1028-JAK (JEMx), 2016 WL 9086939, at *11–12 (C.D. Cal. May 6, 2016) (denying motion for preliminary injunction in light of "competing evidence presented by the parties").

However, "[i]f a movant makes a sufficient demonstration on all four *Winter* factors (three when as here the third and fourth factors are merged), a court must not shrink from its obligation to enforce his constitutional rights, regardless of the constitutional right at issue." *Baird*, 81 F.4th at 1041 (internal quotation marks, citation, and alterations omitted). *See also Brown v. Plata*, 563 U.S. 493, 511 (2011)). "It may not deny a preliminary injunction motion and thereby allow constitutional violations to continue simply because a remedy would involve intrusion into an agency's administration of state law." *Id.* (internal quotation marks and citation omitted).

### B. Declaratory Relief

The Declaratory Judgment Act permits district courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Under federal law, an actual controversy must exist for courts to issue declaratory relief. *Id. See also Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) ("A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution."). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Additionally, "[a] federal court cannot issue a declaratory judgment if a claim has become moot." *Pub. Utils. Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1459 (9th Cir. 1996).

"The decision to grant declaratory relief is a matter of discretion, even when the court is presented with a justiciable controversy." *United States v. State of Wash.*, 759 F.2d 1353, 1356 (9th Cir. 1985) (citations omitted). Where "the state of the record is inadequate to support the extent of relief sought," a court "may, after a full consideration of the merits, exercise its discretion to refuse to grant declaratory relief." *Id.* Additionally, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling

the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *Id.* at 1357.

### III. DISCUSSION

Boyd seeks both declaratory relief and a preliminary injunction. *See* (Mot. at 1, 10–11). In opposition, Defendants address only Boyd's request for a preliminary injunction. *See generally* (Opp.). The Court begins its analysis with Boyd's requested preliminary injunction—the focus of both parties' briefing—before evaluating whether declaratory relief is appropriate based on the record currently before the Court.

#### A. Boyd's Request for Injunctive Relief

Boyd seeks an injunction that would "enjoin the continuation" of certain, allegedly unconstitutional conditions at the Jail, as well as an order "to close the Jail because the conditions of confinement never can or will be remedies [sic]." (Mot. at 1). Defendants oppose. *See generally* (Opp.).

##### 1. Evidence Submitted in Support of the Motion

Attached to the Motion are a declaration signed by Boyd, (Mot. at 17–18 ("Boyd Declaration")), as well as a Wikipedia article entitled *Men's Central Jail* and several articles published by the Los Angeles Times, (*id.* at 19–51). Defendants object to the Wikipedia and Los Angeles Times articles as "impermissible hearsay" lacking any "bearing on Plaintiff's claims or motion." (Opp. at 12 n.3). The Court agrees.

"As a general matter, courts are hesitant to take notice of information found on third party websites and routinely deny requests for judicial notice, particularly when the credibility of the site's source information is called into question by another party." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1028 (C.D. Cal. 2015). Courts also routinely deny parties' requests to take judicial notice of information contained on Wikipedia, a crowd-sourced website "that allows virtually anyone to upload an article." *Campbell ex rel. Campbell v. Sec'y of Health & Hum. Servs.*, 69 Fed. Cl. 775, 781 (2006). *See, e.g., Gerritsen*, 112 F. Supp. 3d at 1028–29 (collecting cases). As for the Los Angeles Times articles, "[c]ourts may take judicial notice of publications introduced to indicate

what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (internal quotation marks and citation omitted). *See also Gerritsen*, 112 F. Supp. 3d at 1029 (collecting cases). Here, however, the question of what information "was in the public realm" regarding the Jail is not germane to the Motion. For these reasons, the Court declines to take judicial notice of the Wikipedia and Los Angeles Times articles.[2]

          2.      <u>Likelihood of Success on the Merits</u>

As stated previously, "[l]ikelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors." *Disney Enters.*, 869 F.3d at 856 (internal quotation marks and citations omitted). *See also Baird*, 81 F.4th at 1042 ("The first *Winter* factor, likelihood of success, is a threshold inquiry and is the most important factor in any motion for a preliminary injunction. That holds especially true for cases where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation." (internal quotation marks and citation omitted)). A movant must set forth evidence to support a likelihood of success but need not "prove his case in full at a preliminary-injunction hearing." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Here, after reciting the allegations in Boyd's original complaint, the Motion asserts that Boyd "is likely to succeed on the merits." (Mot. at 8–11). Boyd does not substantiate this contention with any analysis or argument. In opposition, Defendants first contend that Boyd cannot demonstrate a likelihood of success on the merits on the grounds that his lawsuit is precluded by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, an argument Defendants also advance in their currently pending motion to dismiss. (Opp.

---

[2] This analysis also applies to the Los Angeles Times article Plaintiffs filed "[b]y analogy to Fed. R. App. P. Rule 28(j)" on October 13, 2024. (ECF No. 43). To the extent Plaintiffs seek to "analogize" to the Federal Rules of Appellate Procedure, the Court notes that Plaintiffs' filing failed to "state the reasons for the supplemental citations, referring either to the page of the brief or to a point argued orally." Fed. R. App. P. 28(j).

at 5). Defendants also argue that Boyd fails to meet his evidentiary burden to show likelihood of success on the merits. (*Id.* at 11–13). Because the Court agrees that Boyd fails to meet his evidentiary burden, the Court declines, at this stage of the proceedings, to reach the question of whether the PLRA precludes his lawsuit.

Plaintiffs seek relief on their own behalf, as well as on behalf of a putative class of individuals who have been detained in the Jail, for various constitutional claims brought under 28 U.S.C. § 1983; alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; and alleged violations of certain norms and treaties under international law. (FAC ¶¶ 11–29, 143–59). But Boyd does not, and, based on the Court's review, cannot explain how the scant evidence he submitted demonstrates that Boyd is likely to prevail on these claims.

For example, several of Plaintiffs' claims allege Defendants have conspired to violate the rights of those detained at the Jail. (*Id.* ¶¶ 14–16, 21–24, 143–59). But the Boyd Declaration does not contain any allegations as to any of the named Defendants. Instead, the only parties identified with any specificity are individuals identified by Boyd as gang members who, despite allegedly physically injuring Boyd, stealing his belongings, and otherwise mistreating him, (Boyd Decl. ¶ 5), are not named parties in this lawsuit. The Boyd Declaration alleges that Boyd "went without eating dinner because they didn't feed" him, (*id.* ¶ 7), but it is not clear who "they" are, let alone what connection (if any) they have to Defendants.

Similarly, Plaintiffs seek relief under § 1983 for alleged unconstitutional customs, policies, or practices. A local governing body may be liable under § 1983 only when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). "The Supreme Court has made clear that policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional violations . . . so inconsistent with constitutional rights that even such a single instance indicates at least deliberate

indifference of the municipality." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citations omitted). None of these categories are apparent based on the information contained in the Boyd Declaration. The declaration is limited solely to Boyd's experiences; it does not purport to offer evidence as to experiences of other individuals detained or incarcerated at the Jail, let alone evidence of actions taken by Defendants. And, as to Boyd, the Court lacks evidence or argument sufficient to show that the experiences of which Boyd complains—bad plumbing, vermin, mistreatment by other detainees, the failure to house Boyd in the "military dorm" or "a medical dorm," and lack of adequate food on "several" occasions, (Boyd Decl. ¶¶ 3–7)—were the result of any municipal policy. Likewise, absent additional evidence and argument, the Court cannot conclude that Plaintiffs are likely to succeed on their constitutional claims against Defendants.

Finally, the scope and elements of Plaintiffs' international law claims are not apparent from the FAC and not addressed in the Motion. On these claims, too, Boyd has failed to show a likelihood of success on the merits.

Where, as here, the moving party fails to meet their burden on the threshold inquiry of likelihood of success on the merits, "the court need not consider the other factors[] in the absence of serious questions going to the merits." *Disney Enters.*, 869 F.3d at 856 (internal quotation marks and citations omitted). Because Boyd totally fails in his attempt to show likelihood of success on the merits, he likewise fails to establish any "serious questions going to the merits," *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), and the Court ends its analysis here. *See, e.g.*, *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2019 WL 3099711, at *5 (C.D. Cal. June 17, 2019) (ending preliminary injunction analysis with plaintiff's failure to demonstrate likelihood of success on merits where plaintiff submitted "no evidence" in support of arguments); *Miura Corp. v. Davis*, No. 2:20-cv-05497-SVW-ADS, 2020 WL 5224348, at *3 n.1 (C.D. Cal. June 25, 2020) (declining to grant request for temporary restraining order where moving party "present[ed] no evidence or argument" in support of constitutional claim).

### B. Boyd's Request for Declaratory Relief

Boyd asks the Court "to declare the unconstitutionality, under the United States Constitution, of the conditions of confinement" in the Jail. (Mot. at 1). Defendants do not address Boyd's request for declaratory relief in their Opposition. Accordingly, the Court exercises its discretion to determine whether this remedy should issue. *See A. L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961) ("Declaratory judgment is a remedy committed to judicial discretion.").

"The Declaratory Judgment Act does not grant litigants an absolute right to a legal determination." *State of Wash.*, 759 F.2d at 1356. "A court's decision whether to grant declaratory relief is instead 'a matter of discretion,' and 'the court may, after a full consideration on the merits, exercise its discretion to refuse to grant declaratory relief because the state of the record is inadequate to support the extent of the relief sought.'" *t'Bear v. Forman*, 359 F. Supp. 3d 882, 902 (N.D. Cal. 2019) (quoting *State of Wash.*, 759 F.2d at 1356).

Here, the Court lacks argument, analysis, or facts sufficient to allow it to determine whether Boyd's requested declaratory relief should issue. In the Motion, Boyd simply asserts that, based on his recitation of certain allegations in his Complaint, he "is entitled" to declaratory relief. (Mot. at 11). Because Boyd invokes "unconstitutionality" at a high level of generality, however, it is not clear to the Court on what constitutional basis or bases Boyd's requested declaratory relief rests. Boyd's Motion discusses cruel and unusual punishment, due process rights, and deliberate indifference. (Mot. at 6–8). The legal standards and facts required to establish unconstitutional conduct under each of these theories differ. *Compare Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (discussing the Eight Amendment's prohibition on cruel and unusual punishment) *with Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that prisoners' liberty interests "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life") *and Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (setting forth test for holding prison official liable under Eighth Amendment

for deliberate indifference). Despite this doctrinal complexity, however, the sole evidence Boyd proffers in support of his requested declaratory relief—other than news and Wikipedia articles that the Court declines to consider for the reasons explained above, Section III.A.1—is the one-page Boyd Declaration, which is limited to Boyd's own experience and describes the conditions of his confinement with only minimal detail.

Accordingly, as currently formulated, Boyd's requested declaratory relief presents the Court with the kind of "broad questions that cannot be meaningfully analyzed without the aid of concrete factual backgrounds" and which courts generally defer until a later stage in the proceedings. *Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 703 (D.C. Cir. 1971). *See also Cal. Ins. Guarantee Ass'n v. Price*, 252 F. Supp. 3d 948, 957 (C.D. Cal. 2017) ("The Court declines to award any further declaratory relief at this time because of the insufficiently developed record . . . ."). *Cf. Hutto v. Finney*, 437 U.S. 678, 680–85 (1978) (affirming remedial orders that found "conditions in the Arkansas penal system constituted cruel and unusual punishment" based on fact-intensive review), *abrogated on other grounds as recognized by Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 56 (2024); *Wilson v. Seiter*, 501 U.S. 294, 299 (1991) (holding that courts must conduct "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment").

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion.

**IT IS SO ORDERED.**

DATED: October 21, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE